**SOUTHERN RAILWAY CO. et al., Plaintiffs,**

v.

**BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, Defendants.**

**Civ. A. No. 78–1686.**

United States District Court, D. South Carolina, Columbia Division.

Oct. 24, 1978.

As Amended Jan. 5, 1979.

R. W. Dibble, Jr., Columbia, S. C., for plaintiffs.

Eugene C. Covington, Jr., Foster, Covington & Patrick, Greenville, S. C., for defendants.

### ORDER VACATING TEMPORARY RESTRAINING ORDER

HEMPHILL, District Judge.

This matter is before the court on the motion of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (B.R. A.C.) to vacate a Temporary Restraining Order issued by this court at 1:00 p. m., September 26, 1978. It is BRAC's contention that the Restraining Order was improperly issued because this court was without jurisdiction under Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, to issue injunctive relief; and second, that the same parties were previously before the District Court for the District of Columbia[1] and the decision in that action, which was affirmed by the Court of Appeals for the District of Columbia[2], should be *res judicata* as to these same parties.

This whole question stems from a legal strike which began on July 10, 1978, by BRAC, of the Norfolk and Western (N & W) Railroad. As a result of that strike, members of BRAC employed by other railroads, of which the plaintiff is included, began strikes and picketing against railroads that interchange and/or engage in mutual aid through the Service Interruption Policy which they had with the N. & W. It is this secondary action by the employees of the plaintiff that brought them to this court's doors requesting injunctive relief.

After careful consideration of the matter, it is the opinion of this court that BRAC's motion should be granted. In granting defendant's motion to vacate, this court finds that it lacked jurisdiction under Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, to ever extend the Restraining Order.[3] This matter is not novel in the sense that

---

1. *Alton & Southern Railway Co. et al. v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, No. 78–1607 (D.C., August 25, 1978).

2. No. 78–1900 (C.A.D.C., September 15, 1978).

3. Under Section 4 of the Norris-LaGuardia Act, 29 U.S.C. 104, it is provided, among other things, that

No Court of the United States shall have jurisdiction to issue any restraining order . . . in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

.  .  .  .  .

there have already been several cases dealing with the same matter presented in various districts throughout the country. Primary among these, and the cornerstone of defendants' second stated reason to vacate, is *Alton & Southern Railway Company, et al. v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, No. 78–1607 (D.C., August 25, 1978), which saw the District Court refuse to grant injunctive relief. In that case Judge Robinson analogized the situation before him to the Fifth Circuit case of *Brotherhood of Railroad Trainmen v. Atlantic Coast Line R.R. Co.*, 362 F.2d 649 (5th Cir.), *aff'd by an equally divided court*, 385 U.S. 20, 87 S.Ct. 226, 17 L.Ed.2d 20 (1966), which, like the matter before this court, involved secondary pressure. In the *Atlantic Coast Line* case the Circuit Court held that secondary activity constituted a "labor dispute" within the meaning of the Norris-LaGuardia Act when there was an economic self-interest on the part of the primary employees in taking action against a secondary employer who had in some sub-stantial manner aligned himself with the primary employer.[4]

■ The determination of "alignment in some substantial manner" is necessarily a factual inquiry into the circumstances surrounding each case. *Atlantic, supra*, at 659. In our case this court needs to pursue an inquiry into all activities which might indicate the necessary alignment. It finds alignment in a substantial way on the part of the plaintiff, Southern Railroad, as a result of this participation in a service interruption or strike insurance policy under which a participating railroad whose service is interrupted by a strike or "work stoppage" as defined in the policies, is paid daily indemnities intended to offset costs or losses incurred by the struck railroad as a result of the work stoppage.[5] It was participation in this very strike insurance program that caused the District Court for the District of Columbia in *Alton & Southern* to find that the "economic self-interest test" as set out in *Atlantic Coastline, supra*, had

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

.　　.　　.　　.　　.

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified ．．．．

4. Section 13 of the Norris-LaGuardia Act, 29 U.S.C. 113, a, b, and c, defines labor disputes as follows:

(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and

one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

5. This strike insurance program enabled the railroads to resist whipsaw strike tactics. Each participant in the program contributes a sum equal to its predetermined daily indemnity and additional premiums as provided in the policy.

been satisfied, thus relieving that court of jurisdiction to grant injunctive relief.[6]

■ BRAC also asks this court to consider the *res judicata* effect of the *Alton & Southern* decision. In light of this court's ruling that it lacked jurisdiction under Norris-LaGuardia to issue injunctive relief in this matter, the *res judicata* effect is of little decisive effect. However the court is inclined to grant BRAC's motion to vacate on this ground also. No one can say Southern argued its case to hollow halls. Quite the contrary, Southern has had its case heard by several District Courts, two Courts of Appeal, and inferentially by the Supreme Court. It began its legal journey with its action in the District Court for the District of Columbia resulting in an unfavorable decision.[7] Appealing to the Court of Appeals was fruitless as that court affirmed the District Court and in so doing upheld the ruling that jurisdiction was nonexistent by virtue of Norris-LaGuardia.[8] At this juncture Southern moved in the Court of Appeals for a stay and injunction pending petition for a writ of certiorari to the United States Supreme Court. The Appeals Court granted the motion and on September 26, 1978 Chief Justice Burger after conferring with other members of the court issued an Order which vacated an appeal injunction issued by him as Circuit Justice for the District of Columbia Circuit Court.[9] Granted this was not a determination on the merits of the appeal, but as defendants point out, it does raise certain inferences regarding the likelihood of the United States Supreme Court's disposition of the matter. While our legal system allows every man the right to argue his cause before the appropriate court, it also recognizes that once he has done so, and once he has had his matter decided, he should not be allowed to seek other jurisdictions in which to pursue the same matter. Southern picked its forum, had its matter decided, appealed unfavorably, sought certiorari unfavorably, and now comes to this court seeking exactly what it sought in the District Court for the District of Columbia. It was afforded several hearings and in those hearings no new argument appeared which indicated to this court that the matter before it was any different than the matter before the District Court for the District of Columbia.

In an unpublished decision issued by the Seventh Circuit Court of Appeals on September 29, 1978, the court issued an "extraordinary remedy" not used "absent exceptional circumstances" when it issued a writ of mandamus to compel a United States District Court Judge to modify or dissolve a temporary restraining order he had previously issued. The court's holding can be condensed in the following paragraph found in their opinion:

"It is apparent then, that the participants in the Strike Interruption Policy who were parties to the suit before Judge Robinson have had a full opportunity to litigate the issue as to the propriety of any injunction. The determination of

---

6. *Alton & Southern Railway Co., et al., supra,* at p. 5.

"The particular provisions of the strike insurance plan involved herein establish the necessary substantial alignment of plaintiffs with N & W. And BRAC employees of plaintiff companies share common interest with BRAC employees of N & W in the outcome of the N & W—BRAC controversy, just as plaintiff companies share common interest with N & W in that same dispute."

"For these reasons, this court is deprived of jurisdiction to issue an injunction by the Norris-LaGuardia Act. Defendant's right to take economic action arises from the N & W dispute and not from a separate dispute with plaintiffs."

7. *Alton & Southern,* No. 78–1607 (D.C. August 25, 1978).

8. *Alton & Southern,* No. 78–1900 (C.A.D.C., September 15, 1978).

9. *Alton & Southern,* United States Supreme Court (No. A–272, September 26, 1978).

that issue was contrary to what they believed, and still believe, should have been reached. But a result was reached and that result has been affirmed. The railroads cannot now come into a different forum and expect that result to be ignored. To the extent that Judge Kirkland's order is inconsistent with the *Alton & Southern* decision, it must be vacated. Congress has clearly stated that the courts should not interfere with the economic resolution of disputes between employees and their employers. Judge Robinson has held, and the Court of Appeals has affirmed, that the Norris-LaGuardia prohibition prevents an injunction against strikes against railroads which participate in the Service Interruption Policies with the N. & W. Given this particular set of circumstances, we find that Judge Kirkland so far exceeded the limits of his discretion that mandamus is appropriate." *Id.* at page 4.

This court feels the Circuit Court's reasoning to be solid and applicable to the matter before it now. As such it adopts the reasoning and makes the same its own. For the stated reasons this court vacates its Restraining Order.

AND IT IS SO ORDERED.